### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 20 - 29 1 |
| ) | |
| v. ) | (UNDER SEAL) |
| ) | |
| VICTOR RAMOS SANCHEZ, ) | (False Statements) |
| Defendant. ) | 18 U.S.C. §1001(a)(2) |

### STATEMENT OF OFFENSE IN SUPPORT
### OF DEFENDANT'S PLEA OF GUILTY

The Government respectfully submits the following Statement of Offense in support of a plea of guilty by defendant Victor Ramos Sanchez ("SANCHEZ") to the one-count Information in the above-captioned matter.

### I.     ELEMENTS OF THE OFFENSE

To sustain a conviction for a violation of 18 U.S.C. § 1001(a)(2) at trial, the government must prove the defendant (1) knowingly and willfully, (2) made any materially false, fictitious, or fraudulent statement or representation, (3) in a matter within the jurisdiction of the executive or judicial branch of the Government of the United States. A statement is "material" if it has a natural tendency to influence, or is capable of influencing, either a discrete decision or any other function of the agency to which it was addressed. The statement need not actually influence an agency in order to be material. The "knowing and willful" element does not require that an agency or individual actually be deceived, but only that the defendant knew that his statement was false. False statements to an Assistant U.S. Attorney of the U.S. Attorney's Office for the District of Columbia ("USAO") in a criminal matter are a matter within the jurisdiction of the executive branch, and false statements to a grand jury are a matter within the jurisdiction of the judicial branch.

## II.   SUMMARY OF FACTS

If this case were to go to trial. the government would prove the following facts beyond a reasonable doubt:

1.     The Federal Bureau of Investigation ("FBI") has been investigating the use of the Internet and social media by foreign terrorist groups. including the Islamic State of Iraq and al-Sham ("ISIS") since 2014. Since 2004. ISIS and its predecessors have been designated by the U.S. Secretary of State as a Specially Designated Global Terrorist ("SDGT") under federal law. On or about May 15, 2014, the Secretary of State amended the designation to add the alias Islamic State of Iraq and the Levant ("ISIL"), The Islamic State of Iraq and al-Sham. the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham, Daesh, and Dawla al Islamiya, and Al-Firquan Establishment for Media Production (collectively referred to herein as "ISIS"). On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State. ISIL, and ISIS. ISIS remains a designated FTO. Abu Bakr al-Baghdadi ("al-Baghdadi") was the leader (or "Caliph") of ISIS, at all times relevant to this statement of offense. To gain supporters, recruit fighters, and raise funds, ISIS spreads its message of violent jihad using social media platforms, such as Twitter, Facebook, Telegram, YouTube, Instagram, and Paltalk. On these platforms, ISIS posts audio and video files that include recruitment messages and updates of events in Syria and Iraq. Online chat rooms controlled by ISIS advocates further effectuate this support.

2.     Since on or about September 22, 2014, ISIS has advocated for the death of Americans and Europeans, including civilians, by any means necessary. including beheading. and its leadership gave blanket approval for indiscriminate killing by people residing in these countries. Sunni extremists and others, who are not citizens or residents of Syria and Iraq, have traveled to

Syria and Iraq to join ISIS, an act commonly referred to as "hijrah."[1] Since at least August 2014,

the FBI, the USAO, and a federal Grand Jury for the District of Columbia have been. investigating

U.S. persons attempting to provide material support for ISIS, both by traveling to ISIS territory to

fight on behalf of ISIS, and by committing terrorist acts in the United States on behalf of ISIS.

  3.  Person 1 ("P-1") is not a U.S. person, who resided in Jamaica at all times relevant

to this statement of offense. P-1 was convicted in British court for soliciting murder related to his

encouragement of· Muslims to fight and kill "kuffars" (non-believers): Americans, Jews,

Christians, Hindus, and other non-Muslims. After his conviction, imprisonment, and release, P-1

continued to encourage violence and terrorist acts in speeches posted on the Internet, specifically

on a platform called Authentic Tauheed ("AT"). P-1 has also recorded numerous statements,

posted on AT, inciting violence and supporting ISIS, its former leader al-Baghdadi, al-Qaeda, and

Osama bin-Laden. AT contained recorded lectures of P-1 proselytizing on behalf of and in support

of ISIS. These statements also encouraged Muslims to travel to ISIS territory to live ("hijrah") and

militarily support ISIS against its enemies ("jihad"). On April 18, 2017, a grand jury in the State

of New York, County of New York, charged P-1 with Conspiracy in the Fourth Degree as a Crime

of Terrorism, Soliciting or Providing Support for an Act of Terrorism in the First Degree as a

Crime of Terrorism, Soliciting or Providing Support for an Act of Terrorism in the First Degree,

Attempted Soliciting or Providing Support for an Act of Terrorism in the First Degree as a Crime

of Terrorism, and Attempted Soliciting or Providing Support for an Act of Terrorism in the First

Degree as a Crime of Terrorism. On or about August 25, 2017, P-1 was arrested in Jamaica

pursuant to an extradition request from the United States on the basis of this Indictment. On or

---

[1] "Hijrah" or "hijra" means migration, but was specifically used by Sanchez and P-1 to mean the
travel to engage in jihad.

about December 5, 2017, the United States Office of Foreign Assets Control ("OFAC") designated P-1 as a SDGT for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, ISIS. In or about August 2014, P-1 was religiously married to P-2, who was a resident of the District of Columbia.

4.      SANCHEZ was closely associated with P-2 and P-2's family. Specifically, between on or about January 2012 and April 2017, SANCHEZ was religiously married to P-3. During this marriage, SANCHEZ was friends with P-2, and P-2's family, which included P-2's sons, P-4 and P-5, P-4's wife, P-6, and P-2's stepson, P-7. SANCHEZ, P-2, P-3, P-4, P-5, P-6 and P-7 were also friends with P-8. After P-2 moved to Jamaica to live with P-1 in August 2014, SANCHEZ, P-3, and P-5 lived together in P-2's home in the District of Columbia. P-4, P-6 and P-8 lived in the Washington, D.C. area, and would regularly visit SANCHEZ, P-3, and P-5 at P-2's home in the District of Columbia. P-7 resided in New York, but also visited P-2's home.

5.      In August 2014, SANCHEZ, P-2, P-3, P-4, P-5, P-6 and P-7, traveled to Jamaica and met P-1 in person prior to P-2's marriage to P-1. In Jamaica, P-1 spoke with SANCHEZ, P-2, P-3, P-4, P-5, P-6 and P-7, and told them that al-Baghdadi was a legitimate Caliph to whom they all were religiously obligated as Muslims to give bayat, or allegiance. P-1 further informed the group that this meant that they were further obligated to perform hijrah to the Caliphate in response to the Caliph's call for assistance.

6.      Between on or about August 2014 and at least April 2017, SANCHEZ, P-3, P-4, P-5, P-6, and P-8 (collectively, the "GROUP") met regularly at P-2's home and elsewhere to discuss ISIS. Notably, the GROUP avoided discussing ISIS with persons who they knew were not supportive of ISIS. When the GROUP gathered together they would regularly watch ISIS propaganda videos and information, listen to P-1's lectures including lectures supporting ISIS,

4

hijrah to ISIS territory, and jihad,[2] and discuss the righteousness of violent and terrorist acts performed by ISIS and its followers (including executions by beheading and immolation, slavery, and lone wolf attacks against civilians in the West), hijrah to the Islamic State, and the benefits of becoming a shaheed, or martyr for their faith.  During this period, some members of the GROUP, including SANCHEZ, P-3, P-4, P-5 and P-8 (collectively the "Hijrah Group"), discussed and agreed that ISIS was a legitimate caliphate, and that its leader, al-Baghdadi, was a Caliph to whom they owed their religious obedience.  The members of the Hijrah Group further stated and agreed on numerous occasions that they would each perform hijrah to ISIS territory in order to fight jihad on behalf of ISIS, and that they would take steps to prepare for hijrah while they were in the United States.  The Hijrah Group regularly obtained and distributed propaganda material from ISIS they found on the internet and Twitter, including information on how to perform hijrah safely and get through borders into ISIS territory.  The Hijrah Group agreed that they needed to prepare for hijrah, take security precautions to avoid being caught by law enforcement, and save approximately $10,000 in order to make the journey.  As part of their preparation to fight jihad in ISIS territory, members of the Hijrah Group regularly went paintballing and to gun ranges in the Washington, D.C. area to shoot various weapons. Members of the Hijrah Group were concerned that they might get caught if they traveled to ISIS territory as a group, and therefore encouraged each member to perform hijrah whenever he/she was ready to travel.  At the time, and presently, SANCHEZ knew that in 2014 P-2 and P-7 were aware of the Hijrah Group's intention and desire to perform hijrah to ISIS territory to commit jihad on behalf of ISIS.

---

[2] "Jihad" means fight or struggle, but was specifically used by Sanchez and members of the GROUP to mean violent warfare and fighting on behalf of ISIS against its enemies.

5

7.        Between August 2014 and March 2017, SANCHEZ and P-3 saved several thousand dollars in order to perform hijrah. In or about March 2017, SANCHEZ and P-3 had a child in common, and SANCHEZ grew estranged from P-3 and other members of the Hijrah Group. In or about April 2017, P-2 obtained a divorce certificate signed by P-1 for SANCHEZ and P-3. After on or about April 2017, SANCHEZ did not have regular contact with the GROUP, and stopped listening to P-1's lectures.

8.        Since at least January 2019, a federal grand jury empaneled in the District of Columbia has been investigating matters related to the provision of material support by ISIS by members of the Hijrah Group and related criminal activity.

9.        On or about May 16, 2019, SANCHEZ was served with a grand jury subpoena on May 16, 2019 to appear on May 30, 2019. P-3 had separately been subpoenaed to testify before the grand jury as well, and SANCHEZ and P-3 discussed the fact they had both been subpoenaed before the grand jury. Shortly thereafter, SANCHEZ and P-3 went to P-2's home to talk to P-2 and P-5. During a discussion with P-2, P-3, and P-5, SANCHEZ stated he would not comply with the subpoena. SANCHEZ believed that P-2 was concerned about the investigation, and P-2 told SANCHEZ and P-3, with P-5 being present, that SANCHEZ and P-3 should tell the grand jury and the government they do not recall.

10.       SANCHEZ was served a second subpoena on May 29, 2019 (due to a scheduling conflict) for him to appear before the grand jury on June 13, 2019. SANCHEZ was informed when he was served with the subpoena that his grand jury appearance date had been rescheduled to June 13, 2019. Sanchez willfully failed to appear before the Grand Jury on June 13, 2019.

11.       On or about June 2019, SANCHEZ met P-3 in advance of P-3's grand jury appearance. SANCHEZ repeatedly questioned P-3 about whether she would meet with the

6

government and attend her grand jury hearing, and told her that if she did so, P-3 would be taking SANCHEZ away from their child in common. On or about June 21, 2019, P-3 did not attend a pre-planned witness conference with her counsel and prosecutors of the USAO, in advance of P-3's grand jury appearance.

12.    On or about July 21, 2019, the Honorable Chief Judge Beryl Howell of the United States District Court for the District of Columbia issued a Material Witness Warrant for SANCHEZ's arrest after his failure to appear on June 13, 2019. On July 22, 2019, SANCHEZ was arrested and brought before the Court. During the hearing, SANCHEZ incorrectly claimed, through counsel, that he had forgotten about the date. SANCHEZ was later released by the Court with conditions after obtaining legal counsel. Following the ruling by the Court, SANCHEZ was served with a third subpoena to appear before the Grand Jury on August 8, 2019.

13.    On August 8, 2019, SANCHEZ appeared before the grand jury and refused to meet with prosecutors in advance. He was given full subject warnings and advised that his statements could be used in a future prosecution for perjury or obstruction of justice. During his testimony, he was orally provided his legal rights, including his Fifth Amendment right not to incriminate himself, and that he had legal counsel available to him throughout the proceeding. While under oath to tell the truth, SANCHEZ began to answer questions before the federal grand jury posed by Assistant United States Attorneys and members of the grand jury. A number of his responses were willfully and materially false, including those discussing his association with foreign terrorist organizations, including ISIS. Specifically, SANCHEZ provided the following false statements:

a.    He never distributed material, videos, or images produced by ISIS;

b.    He does not know anyone who distributed material, videos, or images produced by ISIS;

7

      c.  He never discussed or expressed a desire to fight jihad on behalf of ISIS;

      d.  He does not know anyone who has ever discussed or expressed a desire to fight jihad on behalf of ISIS;

      e.  He never expressed a desire to make hijrah to ISIS territory;

      f.  He does not know anyone who has ever expressed a desire to make hijrah to ISIS territory;

      g.  He never made plans to travel to ISIS territory;

      h.  He never made an agreement to travel to ISIS territory;

      i.  He never agreed with anyone to travel to ISIS territory if he saved enough money;

      j.  He does not know anyone who has ever made plans to travel to ISIS territory;

      k.  He does not know anyone who agreed to travel to ISIS territory;

      l.  He never believed ISIS was the legitimate Caliphate; and

      m.  He did not know of anyone who believed that ISIS was the legitimate Caliphate.

14.      SANCHEZ also was asked in the Grand Jury if he had any contact with P-2 or P-5 after being subpoenaed, and whether he discussed the subpoena with them. SANCHEZ falsely denied multiple times that he met with P-2 or P-5 after receiving the subpoena, but after being asked a third time, SANCHEZ admitted that he had contact with P-2 and P-5 on two occasions after receiving the subpoena. Thereafter, SANCHEZ falsely denied they discussed the topic of the grand jury subpoena during those meetings.

15.      SANCHEZ understood his false statements were material to the ongoing criminal and grand jury investigations, and that his statements related to an SDGT, that is ISIS, and to

8

persons who desired and agreed to travel to ISIS territory to provide material support to ISIS, and

to perform violent jihad for ISIS against its enemies.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
N.Y. Bar No. 4444188

By:

Tejpal Chawla
Jessica Brooks
Assistant U.S. Attorneys

Dated: December 17, 2020

9

## DEFENDANT'S ACCEPTANCE

I have read each of the pages which constitute the Statement of Offense and have discussed it with my attorney, Stephen Brennwald. I fully understand this proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement. I am satisfied with the legal services provided by my attorneys in connection with this proffer and my plea agreement and matters related to it.

Date: 12/31/2020

_____
Victor Sanchez
Defendant

## ATTORNEYS' ACKNOWLEDGMENT

I have read each of the pages which constitute the Statement of Offense, reviewed them with my client, and discussed the provisions of the proffer with him, fully. These pages accurately and completely set forth the government's proof as I understand it.

Date: 12/21/2020

_____
Stephen Brennwald
Attorney for Defendant